Woodworth and another v. Janes and others.

---

JOHN WOODWORTH AND WAIT RATHBUN, *Appellants, against* ELIJAH JANES, JAMES DOLE AND ELI JUDSON, *Respondents.*

A. claiming title under the Connecticut Susquehannah Company to land situate in the state of Pennsylvania, and claimed by that state, sold the land to B. who gave his notes for the purchase money, part of which was paid ; and A. executed to B. a *quit-claim* deed for the land. B. afterwards filed his bill in chancery, praying that A. might be perpetually enjoined from assigning the notes, or proceeding at law to recover the amount ; and that the money paid might be refunded ; it was held, that the sale was *maintenance,* in selling a *pretended* title, and that both parties being *in pari delicto,* a court of equity would not relieve either ; and the bill was, therefore, dismissed.

The individual states having submitted their territorial claims to the *judiciary* of the United States are to be so far considered as having ceded their sovereignty, and as corporations ; and their right to transfer land must be judged of by the same rules of common law as the rights of other persons, natural or politic.

ON the 6th May, 1799, the appellants filed their bill in the court of chancery against the respondents, setting forth, among other things, that the Connecticut Susquehannah \*Company claim title to a tract of land, com- [\*418] monly called the Connecticut Susquehannah Com-

---

pany Purchase, situate in the counties of Northumberland, Northampton and Luzerne, in the commonwealth of Pennsylvania, and within and under the jurisdiction of the said commonwealth ; that the claim of the state of Connecticut had been uniformly opposed and denied by the commonwealth of Pennsylvania ; and that, in order to deter any person or persons from making entry, or taking possession of the said lands, or any part thereof, under pretence of title derived from Connecticut, the legislature of that commonwealth, on or about the 11th day of April, 1795, passed an act entitled " an act to prevent intrusions on lands in the counties of Northampton, Northumberland and Luzerne," imposing the penalty of 200 dollars fine, and imprisonment not exceeding twelve months, on any person or persons, that, under color or pretence of title derived from Connecticut, should take possession of, enter, intrude or settle any of the said lands, situate within the said counties and commonwealth of Pennsylvania ; and further, that every person who should combine or conspire for the purpose of conveying, possessing or settling on any of the said lands, under any such pretended title, or for the purpose of laying out townships, by persons not appointed or acknowledged by the said commonwealth, should, for every such offence, forfeit a sum not less than 500 dollars nor more than 1000, and be subject to imprisonment at hard labor not exceeding eighteen months, as the court in their discretion might direct; that Elijah Janes and James Dole, two of the respondents, pretending that they were the owners, or had regular title from the state of Connecticut, for two-third parts of a certain township of land known by the name of Janes, containing in the whole 16,000 acres of land, being part of the lands claimed by Connecticut and within the jurisdiction [*419] of the commonwealth of Pennsylvania, *sold to the appellants the said two-thirds of the said township, for 1000 pounds, current money of the state of New York ; that on the 4th day of May, 1796, the said Elijah Janes and James Dole, by a certain indenture, sealed with their seals, and bearing date the day and year last aforesaid, bargained,

released, and for ever quit-claimed unto the appellants, all their right and title to two equal undivided third parts of the said township; and for the sole consideration aforesaid, the appellants executed to the said Elijah Janes and James Dole their three promissory notes ; one note for 333 pounds 6 shillings and 8 pence, payable on the 7th day of April, 1797 ; one other note for the like sum, payable on the 7th day of April, 1798; and one other note for the like sum, payable on the 7th day of April, 1799; which several notes bore interest from the 7th day of April, 1796 ; that the appellants were wholly ignorant, and had never been advised, of the existence of the said act of the commonwealth of Pennsylvania, or of any of the penalties or restrictions therein contained, at the time of executing the said conveyance or giving the said notes; that the equal half of the two first notes mentioned were duly paid soon after they became due, but without any knowledge on the part of the appellants of the existence of the said statute of Pennsylvania ; that the said Elijah Janes and James Dole endorsed the said second note to Eli Judson, one of the respondents, and shortly thereafter the said John Woodworth was called on for payment of the other half of the said last mentioned note ; and, not having the money, in order to save costs, consented to execute a warrant of attorney, authorizing a judgment to be entered against him in favor of the said Eli Judson, for the balance then remaining due on the said note, at the April term of the supreme court, 1799, which was accordingly entered in the term of April for the sum of 530 dollars and 68 cents, being the amount of principal, interest and costs : *that the said Eli Judson was merely a nominal    [*420] plaintiff, and was to account to the said Elijah Janes and James Dole for the avails of the note.

The appellants prayed an injunction against further proceedings at law, that the said Elijah Janes and James Dole might be restrained from negotiating the note thirdly payable ; that the money so paid might be refunded, and for general relief.

To this bill the respondents answered, by stating, that the

respondents, Janes and Dole, in the winter of the year 1795, having been informed that the appellant, Wait Rathbun, was interested in the Connecticut Susquehannah Company Purchase, applied to him for information respecting it ; and being assured by him of the validity of the title, on his expressing an inclination to be concerned in extensive purchases of those lands, and regretting his inability to procure the necessary sums of money, they entered into an agreement with him, the terms of which were, that he should make the purchases, and have a reasonable allowance made for his services, the necessary advances to be made by them ; that each should be entitled to one-third part of the lands, each paying one-third part of all moneys expended ; that the appellant, Rathbun, then proceeded in his purchases, and having obtained a sufficient number of rights, applied to certain persons appointed as commissioners to the Susquehannah Company, resident on the lands, and on producing proof that the rights were genuine, received a grant in fee-simple, to himself and the respondents, Janes and Dole, for a township, distinguished by the name of " Janes," containing 16,000 acres ; and a final adjustment and settlement of the concern between the respondents, Janes and Dole, and the appellant, Rathbun, was then made ; that the appellant, Rathbun, having sold his one-third part of the township to a certain Jonas Morgan, for 310 pounds, applied in the month of April, 1796, to Janes and Dole, for the purchase [*421] *of the two remaining third parts, which they agreed to quit-claim to him for the sum of 1000 pounds ; but refusing to accept his notes without further security for the payment, Rathbun, with the appellant, John Woodworth, offered to take the lands in the manner and upon the terms proposed, and give their joint notes for the payment of the purchase money ; which proposal being accepted by the respondents, Janes and Dole, they executed a release and quit-claim to the appellants, and received from them three promissory notes, payable at different periods, for the amount of the consideration money ; that the appellant, Woodworth, paid the one-half part of the moneys secured by two of the

notes as they became due, and there remained due on the second note, on the 7th day of April, 1799, the sum of 511 dollars and 56 cents; this note, after it became payable, was endorsed by the respondents, Janes and Dole, to the other respondent, Eli Judson, merely for the purpose of using his name in the recovery ; from an apprehension, as the respondent, James Dole, was sheriff of the county of Rensselaer where the appellants reside, that some inconvenience might otherwise arise from this circumstance in conducting a suit, if it should be necessary ; that on the 7th day of April, 1799, the appellant, John Woodworth, executed a warrant of attorney, authorizing a judgment to be entered in the supreme court of judicature of this state in favor of the respondent, Eli Judson, for the above sum of 511 dollars and 56 cents, by virtue whereof a judgment was accordingly entered.

The plaintiff replied, and put the cause at issue, and rules for the examination of witnesses and for publication were entered, but no witnesses were examined on either side. The cause was heard on the bill and answer on the 18th December, 1799, and the act of Pennsylvania, mentioned in the pleadings, was read at the hearing. The chancellor decreed, that the bill of the *appellants should be [*422] dismissed with costs. And to reverse that decree the present appeal was brought.

The counsel for the appellants insisted :

1. That no legal, valuable or good consideration was ever received by the appellants from the respondents for the notes ; and, therefore, that the several sums of money so received by the respondents, ought, from principles of justice and equity, to be refunded.

2. The contract and sale mentioned and set forth in the bill, and admitted by the answer, conveyed no manner of right and title to the appellants; and, by the laws of the commonwealth of Pennsylvania, the exercise of an act of ownership, under the pretended title of Connecticut, is highly criminal, and expressly prohibited under severe penalties.

3. That to permit such contracts and sales, and to sanc-

tion them in courts of justice, is against all principles of public policy.

4. Although the money paid on the first and second notes was voluntary, yet it was without a knowledge of the laws of Pennsylvania; and at all events, if paid with a full knowledge, the injustice and inequity of retaining it, now fully appears.

The cause was argued by *Emott* and *Spencer*, for the appellants, and by *Hoffman*, Attorney General, *Lush* and *Riggs*, for the respondents.

The opinion of the court was, in substance, as follows:

*Per Curiam.*   This is to be regarded as a case of *maintenance*, in buying and selling a pretended title.   The respondents, claiming under Connecticut, sold lands within the actual jurisdiction of Pennsylvania, and held *adversely* by that state.   The respondents state that both parties *knew* that a controversy existed between the different claimants under the two states; and that in consequence [*423] *of such controversy the lands were *quit-claimed* for 23 cents per acre, when they were, in fact, worth two dollars an acre.   The prayer of the appellants is, that the respondents may refund the money which they have received, and be perpetually enjoined from taking out execution on the judgment, and from assigning or suing the third note.

The individual states have submitted their interfering territorial claims to the judiciary of the United States, and, in respect to those rights, are to be deemed to have ceded their sovereignty to the United States, and to be so far considered as corporations.   .Their rights to pass land must be judged of by the same rules of common law as the rights of other persons, natural or politic; and before they can convey land held *adversely*, they must reduce their right to possession by suit.   Conveyances, otherwise, are acts of maintenance, and are no consideration for a contract.   The vendee in the present case purchased *knowingly*, and was therefore in equal fault; and the rule, that *in pari delicto potior est conditio possidentis*, must be applied to them; and a court of

Armstrong and Barnwall v. Gilchrist.

equity will not relieve either, but leave them to pursue their remedies (if any they have) at law.

The decree of the chancellor was, therefore, right in dismissing the bill, and the same must be affirmed. Each party must pay his own costs in the court below, and on the appeal.

Judgment affirmed.(*a*)(*b*)

---

(*a*) [Old note.] The above is the substance of the opinion as delivered by Mr. Justice Benson, in which the majority of the court concurred. Benson, J., Kent, J. and Radcliff, J. were of opinion that the court, being in possession of the merits of the cause, in order to prevent further litigation, ought to have modified the decree, so as perpetually to enjoin the respondents from assigning or suing on the note ; but Lewis, J. and a majority were for affirming the decree as it stood. (See *Whitaker* v. *Cone, ante,* 58.)

(*b*) See Bro. Max. 325, and authorities cited in the notes. The maxim, *In pari delicto potior est conditio possidentis* applies to actions brought to recover money paid on a fraudulent contract by a party to the fraud, as upon an unlawful bet, insurance, gambling or stock contract, or in consideration of the composition of a felony, or upon a contract in violation of the statute against champerty and maintenance, or upon the sale of an office. The principal is illustrated in a body of cases too numerous to be cited. A few of these, however, are given. (*Best* v. *Strong,* 2 Wend. 319. *M'Cullum* v. *Gourlay,* 8 Johns. R. 147. *Rust* v. *Gott,* 9 Cow. 169. *Burt* v. *Place,* 6 id. 431. *Greenwood* v. *Curtiss,* 6 Mass. 381. *Pearson* v. *Lord,* id. 84. *Barnard* v. *Crane,* 1 Tyler, 457. *Babcock* v. *Thompson,* 3 Pickering, 446. *Worcester* v. *Eaton,* 11 Massachusetts, 368. *Denny* v. *Lincoln,* 5 id. 385. *Merwin* v. *Huntington,* 2 Conn. 209. *Perkins* v. *Eaton,* 3 New Hamp. 152. *Groton* v. *Waldoborough,* 2 Fairf. 306. *Livingston* v. *Wootars,* 1 Nott & M'Cord, 175.)