## John A. Welles & Samuel B. Knapp *v.* River Raisin and Grand River Railroad Company *et al.*

Where the charter of a bank prohibited the discounting of notes for stockholders to pay instalments on their stock, and a note for $70,000 and a certificate of deposite on which $12,000 was due, were discounted to enable an individual to purchase a controlling interest in the bank, and to pay the balance due the bank on the stock purchased by him, and a bill was filed to restrain a suit brought by the bank on the note, and to have the note and certificate given up and cancelled; upon demurrer it was *held,* that the bill should not be sustained, and that the parties should be left to their remedy at law.

Where a bill is filed for relief, the discovery is ancillary, and a demurrer which is good to the relief is good to the discovery.

Where a complainant, entitled to discovery only, goes on to pray relief in addition, his whole bill is demurrable.

Where relief has been refused to a party in this Court on account of the illegality of a transaction, the Court will not aid him at law.

This was a hearing on general demurrer.

The bill was filed to stay proceedings at law, and to have a certain note and certificate of deposite delivered up to be cancelled.

The bill states, that, by the act incorporating the River Raisin and Grand River Railroad Company, the stockholders were authorized to establish a bank at Tecumseh, with a capital of $100,000, to be divided into 2000 shares of $50 each; the stockholders of the bank to be a body corporate by the name of the President, Directors and Company of the Bank of Tecumseh. That the bank was to be managed by the president and directors of the railroad company, who, before the bank went into operation, were to convey to it the entire stock of the railroad as security for the payment of the notes and debts

of the bank. That the bank was established, and its stock all taken except 300 shares. That in January, 1838, Dan B. Miller was the owner of 1100 shares of this stock, on which there had been paid in the sum of $15 on each share, amounting in all to the sum of $16,500. That about this time the complainant Knapp entered into a negotiation with Miller for the purchase of his stock and the controlling interest in the bank, and the following agreement was concluded between Knapp and Miller, viz: Miller was to transfer his 1100 shares of bank stock, and a majority of railroad stock to Knapp, who was to pay him $16,500 for the bank stock, and $10,000 for the railroad stock, making in all the sum of $26,500. Bill alleges that the bank stock was at the time below par, and that Knapp agreed to pay the $10,000 only in consideration of getting a majority of the railroad stock, which, by the charter, controlled the bank stock. That February 1st, 1838, Knapp took to the bank, and delivered to George W. Germain, the cashier of the bank, a certificate of deposite of the Bank of Wisconsin for $70,000, and a joint and several promissory note made by Samuel B. Knapp and John A. Welles, the complainants, and Jira Payne, for $70,000, dated January 31st, 1838, payable to the president, directors and company of the bank, one day after date, with interest. Fifty-eight thousand dollars were credited on the certificate of deposite as having been settled or paid, and then the note for $70,000 and the certificate of deposite for the balance due upon it, which was $12,000, were discounted by the bank, and the avails credited upon its books to the complainants and Payne. That the cashier of the bank, on the same day, delivered to Miller promissory notes and other securities, which had been discounted by the bank for his benefit, to the amount of $24,528 61, which, with the sum of $453.39, the interest and pro-

fits on the same, was charged to the account of the complainants, and that, at the request of Knapp, Miller transferred the eleven hundred shares of bank stock to the following persons, who, as the bill alleges, held the same in trust for Knapp and subject to his order, viz: to Henry T. Stringham, seven hundred shares, on which there had been paid in $10,500; to the complainant, John A. Welles, three hundred and fifty shares, on which there had been paid in $5,250; and to Jira Payne, fifty shares, on which there had been paid in $750; making an aggregate of payments on said eleven hundred shares of stock, of $16,500. That the balance of the $26,500, after deducting the aforesaid amount of promissory notes &c., was paid to Miller by Knapp. States that Miller had not assigned a majority of the railroad stock to Knapp; that he had never had the control of a majority of the railroad stock, and that the individuals who had the control of the same, at the time the note and certificate of deposite were discounted, were the directors of the bank, and that they had refused to transfer the same to Miller or to the complainants, or either of them, or to enable Miller to do so. Charges that the promissory note and certificate of deposite were discounted and received by Germain in payment of the instalments due on the eleven hundred shares of stock, and with the intent of providing the means of furnishing such payment and other payments on said stock, and enabling Miller to withdraw the notes and money which had been paid in on his stock. That Germain knew of the contract between Knapp and Miller; that he knew the object for which the note and certificate were offered for discount; that he knew Miller had not the control of the railroad stock and could not procure it; and that, with a knowledge of these facts, he received and discounted the note and certificate, and gave up to Miller the notes and other securities above

stated.   That the $70,000 promissory note was made by the complainants and Payne, solely with the view of enabling Knapp to have the means of carrying out his agreement with Miller, and of having it discounted at the bank; that the certificate of deposite was obtained for a like purpose, and that neither of the complainants, at the time the note and certificate were discounted, had any knowledge or notice that Miller could not carry out his agreement with Knapp, but that the president and directors of the bank had full knowledge thereof through their cashier, George W. Germain.   The bill further states that Stringham, Welles and Payne were severally credited with such part of the avails of the promissory note and certificate of deposite, as was necessary to pay the remaining instalments due on the stock held by them respectively, and that the three hundred shares of stock which were not taken when the bank commenced operations, were subscribed for by Payne, and stood in his name, and that he was credited with $15,000 of the avails of the discounted note and certificate to pay for it.   That the bank had sued Welles on the $70,000 note, and the complainants filed their bill to restrain the proceedings at law, and to have the note and certificate of deposite given up and cancelled, on the ground that the bank, by discounting the note and certificate of deposite, for the purposes aforesaid, had exceeded its powers, and violated the twenty-second section of its charter, and that Miller was guilty of fraud in undertaking to transfer to Knapp a majority of the railroad stock, when it was not in his power to do so, and that the directors of the bank had notice of the fraud, through Germain, their cashier, when the note and certificate were discounted.

The defendants put in a general demurrer to the bill.

Welles *v.* River Raisin & Grand River R. R. Co.

*T. Romeyn,* for complainants.

*A. D. Fraser,* for defendants.

THE CHANCELLOR. By the twenty-second section of the act incorporating the railroad company, and authorizing the establishment of the bank, one tenth part of the amount of each share of bank stock is required to be paid in specie at the time of subscribing, and the balance in such instalments, and at such times, as the directors should require, they giving sixty days' notice thereof, and no one instalment to exceed five dollars on a share. It is also provided, by the same section, "that no note or other evidence of debt shall be discounted or received by the directors, in payment of any instalments called in or required to be paid, with intent to provide the means of furnishing such payment, or with intent of enabling any stockholder to withdraw any part of the money paid in by him on his stock." This express prohibition against discounting a note to enable a stockholder to pay in his stock, was designed to secure the bill-holders of the bank, and its other creditors, against losses which they might otherwise sustain by the substitution of stock notes in the place of actual capital. The discounting of the note and certificate of deposite for the purposes stated in the bill, viz. to enable Knapp to purchase Miller's stock, and pay the bank what was still due on it, (but $15 having been paid on a share,) and to enable Payne to subscribe and pay for the three hundred shares which were not taken when the bank was put into operation, was a clear and palpable violation of this part of the act, and a fraud upon the law under which the bank was established. Knapp must have known at the time that the officers of the bank had no right, under its charter, to discount the note and certificate

for such a purpose. The whole transaction appears to have been gone into to give him the ownership and control of the bank. But it is wholly immaterial whether he had such knowledge or not. The act of incorporation is a public law, of which he was bound to take notice. Are the complainants, on this statement of their case, entitled to relief in this Court? In *Woodworth* v. *Jones*, 2 *Johns. Cas.* 417, the parties had been guilty of maintenance, in buying and selling a pretended title to land, and it was held equity would not relieve either of them, but would leave them to their remedy, if any, at law. Such must be the decision in this case. To give relief under the facts and circumstances stated in the bill, would, it seems to me, be a perversion of justice, and an encouragement to bankers to commit frauds upon the public, through the improper management of the moneyed institutions under their control.

In *Bolt* v. *Rogers*, 3 *Paige R.* 157, Chancellor Walworth says: "Wherever two or more persons are engaged in a fraudulent transaction to injure another, neither law nor equity will interfere to relieve either of those persons, as against the other, from the consequences of their own misconduct."

The bill cannot be sustained as a bill of discovery merely. When a bill is filed for relief, the discovery is ancillary, and a demurrer that is good to the relief is also good to the discovery. The rule is well established in England, that, if the complainant is entitled to discovery only, and the bill goes on to pray relief in addition to the discovery, the whole bill may be demurred to. *Coop. Eq. Pl.* 188; 3 *Ves. R.* 7; 10 *Id.* 553. The rule is otherwise in the state of New York. The English rule, however, I think preferable, as it keeps up a proper distinction between bills for relief and bills for a discovery only. The Court

should not be required to examine the complainant's case twice over; first, to ascertain whether he is entitled to relief, and, if not, then to see whether the bill can be retained as a bill for a discovery only.

But again. Would this Court aid a party at law, to whom it had expressly refused to give relief in this Court, —not for want of jurisdiction, but on account of the illegality of the transaction? There can be but one answer given to such a question.

Demurrer allowed, and bill dismissed with costs.